UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**ROLANDO VILLAREAL,**

   *Plaintiff*,

**v.**                                                                                Case No. SA-22-CV-1008-JKP

**TOWNE PARK, LLC,**[1]

   *Defendant*.

## MEMORANDUM OPINION AND ORDER

Before the Court are two motions filed by Defendant Towne Park, LLC ("Towne Park" or simply "Defendant"): (1) Motion for Summary Judgment (ECF No. 50) and (2) Motion to Strike Plaintiff's Testifying Expert Designations (ECF No. 59). Through the first motion and pursuant to Fed. R. Civ. P. 56, Defendant seeks dismissal of this case. With the filing of Plaintiff's response (ECF No. 54) and Defendant's reply (ECF No. 55), the motion is ripe for ruling. The second motion is also ready for ruling. For the reasons that follow, the Court grants the motion for summary judgment and deems the other motion moot.

### I. BACKGROUND[2]

Through his Second Amended Original Petition (ECF No. 36), Plaintiff asserts three claims against Towne Park. The Court, however, previously dismissed Plaintiff's "negligent activity claim, which Plaintiff's direct and vicarious liability claims encompass." *See* ECF No. 44. Thus, the only remaining claim is for premises liability.

Viewed in the light most favorable to him, the facts show that, as Plaintiff exited his vehicle in a hotel valet area, he slipped on wet pavement. There is no dispute that the wetness was from

---

[1] Based upon prior filings in this case, Defendant Towne Park, LLC is the only remaining defendant in this case.

[2] The factual background is uncontested unless otherwise noted. The Court considers disputed facts in the light most favorable to the non-movant as required through the summary judgment process.

rainwater. The water was tracked in by a vehicle, dripped from Plaintiff's or another vehicle, or windblown from outside the covered area. The parties agree, furthermore, that Plaintiff was an invitee on the premises in question. However, they contest whether Defendant controlled the premises. Plaintiff also claims that there were no clear and obvious warning signs or signs of caution for patrons even though the evidence shows two "caution wet" signs visible as his vehicle approached the entrance.

Defendant presents three arguments for summary judgment: (1) rainwater is not a dangerous condition under Texas law; (2) even if rainwater constitutes a dangerous condition, the evidence demonstrates that it exercised reasonable care to alleviate any potential risks to customers; and (3) alternatively, the evidence establishes that it is not an "owner or occupier" of the property sufficient to subject it to liability. It also submits that the undisputed material facts clearly establish that Plaintiff's "head" injury is nonexistent.

## II. SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "As to materiality, the substantive law will identify which facts are material" and facts are "material" only if they "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over material facts qualify as "genuine" within the meaning of Rule 56 when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Given the required existence of a genuine dispute of material fact, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247–48. A claim lacks a genuine dispute for trial when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This includes identifying those portions of the record that the party contends demonstrate the absence of a genuine dispute of material fact. *Id*. When seeking summary judgment on an affirmative defense, the movant "must establish beyond peradventure" each essential element of the defense. *Access Mediquip LLC v. UnitedHealthcare Ins. Co.*, 662 F.3d 376, 378 (5th Cir. 2011), *adhered to on reh'g en banc*, 698 F.3d 229 (5th Cir. 2012); *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).

But when "the nonmovant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is [a genuine dispute] of material fact warranting trial." *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 301–02 (5th Cir. 2020) (quoting *In re: La. Crawfish Producers*, 852 F.3d 456, 462 (5th Cir. 2017)). The movant need not "negate the elements of the nonmovant's case." *Austin v. Kroger Tex., LP*, 864 F.3d 326, 335 (5th Cir. 2017) (emphasis omitted) (parenthetically quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076 n.16 (5th Cir. 1994) (en banc)). In these instances, however, the movant must "point[] out that there is no evidence to support a *specific element* of the nonmovant's claim"; rather than making "a conclusory assertion that the nonmovant has no evidence to support his *case*." *Id*. at 335 n.10.

Once the movant has carried its summary judgment burden, the burden shifts to the nonmovant to establish a genuine dispute of material fact. With this shifting burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 234 (5th Cir. 2016) (citation omitted). Additionally, courts have "no duty to search the record for material fact issues." *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d

851, 857 (5th Cir. 2010); *accord Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012).

### III. APPLICABLE LAW

"Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996); *accord Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Because jurisdiction in this case is based on diversity of citizenship, *see* ECF No. 36 ¶ 4, the Court must "apply Texas law," *Ocwen Loan Servicing, LLC v. Berry*, 852 F.3d 469, 473 (5th Cir. 2017); *accord West v. Conrail*, 481 U.S. 35, 39 n.4 (1987). The parties agree that Texas law applies to this diversity action.

### IV. ANALYSIS

Texas law provides "two theories of liability available to injured invitees." *Olivarez v. Wal-Mart Stores Tex., LLC*, No. 5:21-CV-0840-OLG, 2023 WL 3035416, at *3 (W.D. Tex. Feb. 7, 2023) (recommendation of Mag. J.) *accepted by* 2023 WL 3035407 (W.D. Tex. Mar. 2, 2023).

> Depending on the circumstances, a person injured on another's property may have either a negligence claim or a premises-liability claim against the property owner. When the injury is the result of a contemporaneous, negligent activity on the property, ordinary negligence principles apply. When the injury is the result of the property's condition rather than an activity, premises-liability principles apply.

*Occidental Chem. Corp. v. Jenkins*, 478 S.W.3d 640, 644 (Tex. 2016). "Negligence and premises liability claims thus are separate and distinct theories of recovery, requiring plaintiffs to prove different, albeit similar, elements to secure judgment in their favor." *United Scaffolding, Inc. v. Levine*, 537 S.W.3d 463, 471 (Tex. 2017). These claims "are based on independent theories of recovery" and "are not interchangeable." *Id*.

The only claim at issue in this case is one for premises liability. Under Texas law, a premises liability claim has four elements:

(1) Actual or constructive knowledge of some condition on the premises by the owner/operator;

4

    (2) That the condition posed an unreasonable risk of harm;

    (3) That the owner/operator did not exercise reasonable care to reduce or eliminate the risk; and

    (4) That the owner/operator's failure to use such care proximately caused the plaintiff's injuries.

*Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex. 1992).

For an invitee plaintiff, "the premises liability inquiry focuses on whether [the defendant] proximately caused [the plaintiff's] injuries by failing to use ordinary care to reduce or to eliminate an unreasonable risk of harm created by a premises condition that it knew about or should have known about." *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005). "Under premises-liability principles, a property owner generally owes those invited onto the property a duty to make the premises safe or to warn of dangerous conditions as reasonably prudent under the circumstances." *Jenkins*, 478 S.W.3d at 644. Unless the defendant owes the plaintiff "a duty to warn of or ensure against" the asserted dangerous condition, a premises liability claim necessarily fails. *Walker v. UME, Inc.*, No. 03-15-00271-CV, 2016 WL 3136878, at *2 (Tex. App. – Austin June 3, 2016, pet. denied).

Defendant attacks the premises liability claim on three fronts. First, it contends that rainwater is not a dangerous condition under Texas law because such conditions do not pose an unreasonable risk of harm. Second, it argues that even if rainwater constitutes a dangerous condition, the evidence demonstrates that it exercised reasonable care to alleviate any potential risks to customers. And finally, it argues in the alternative that the evidence establishes that it was not an "owner or occupier" of the property sufficient to subject it to liability.

The Court finds the first contention dispositive in this case. The Texas Supreme Court has definitively held "that ordinary mud or dirt in its natural state can and often does form a condition posing a risk of harm, but not an 'unreasonable' risk of harm." *M.O. Dental Lab v. Rape*, 139 S.W.3d 671, 675 (Tex. 2004) (per curiam). It found no material distinction between "accumulation

5

of mud on a man-made surface" and mud occurring in its natural state elsewhere. *Id*. at 676. "Ordinary mud that accumulates naturally on an outdoor concrete slab without the assistance or involvement of unnatural contact is, in normal circumstances, nothing more than dirt in its natural state and, therefore, is not a condition posing an unreasonable risk of harm." *Id*.

The Texas Supreme Court recognized that "[h]olding a landowner accountable for naturally accumulating mud that remains in its natural state would be a heavy burden because rain is beyond the control of landowners." *Id*. It further recognized that "accidents involving naturally accumulating mud and dirt are bound to happen, regardless of the precautions taken by landowners." *Id*. In general, invitees "are at least as aware as landowners of the existence of visible mud that has accumulated naturally outdoors and will often be in a better position to take immediate precautions against injury." *Id*. Because "[t]he ordinary mud found on the concrete slab outside of the M.O. Dental Lab accumulated due to rain and remained in its natural state . . . as a matter of law, it was not a condition that posed an unreasonable risk of harm to [the invitee] necessary to sustain her premises liability action." *Id*.

The Texas Supreme Court later extended the *M.O. Dental* rationale to naturally occurring icy conditions. *Scott & White Mem. Hosp. v. Fair*, 310 S.W.3d 411, 415 (Tex. 2010) (applying Ohio law but recognizing that Texas law is consistent). Because it found "no reason to distinguish between the mud in M.O. Dental and the ice in [its] case, [it held] that naturally occurring ice that accumulates without the assistance or involvement of unnatural contact is not an unreasonably dangerous condition sufficient to support a premises liability claim." *Id*. As part of its analysis, it recognized: "Both conditions pose the same risk of harm, and ice, like mud, results from precipitation beyond a premises owner's control." *Id*. at 414.

Unsurprisingly, courts have applied the same rationale to rainwater. *See Estes v. Wal-Mart Stores Tex., LLC*, No. 3:16-CV-02057-M, 2017 WL 2778108, at *3 (N.D. Tex. June 27, 2017); *Bufler v. Apeck Constr., LLC*, No. 03-14-00323-CV, 2016 WL 3521877, at *2 (Tex. App. – Austin,

June 21, 2016, no pet.). "Rain on a sidewalk can and often does form a condition posing a risk of harm, but not an 'unreasonable' risk of harm." *Bufler*, 2016 WL 3521877, at *2 (quoting *M.O. Dental*, 139 S.W.3d at 675).

In *Estes*, the plaintiff "provided no evidence that the puddle in which she slipped did not result from naturally occurring rain falling at the time of her fall." 2017 WL 2778108, at *3. Nor was there any "evidence that the puddle accumulated due to any non-natural condition." *Id*. Indeed, the plaintiff "presented no evidence that the hazard she complains of—a slippery puddle—was not a danger normally associated with rain, one that Plaintiff was not clearly aware of, nor one that was substantially more dangerous than should have been anticipated." *Id*. Accordingly, [b]ecause rainwater falls under the general rule that naturally accumulating conditions do not create an unreasonable risk of harm, [the plaintiff failed] to establish facts which could support a claim for premises liability under Texas law." *Id*.

These cases show that Texas courts consistently hold, "as a matter of law that naturally occurring or accumulating conditions such as rain, mud, and ice do not create conditions posing an unreasonable risk of harm." *Walker*, 2016 WL 3136878, at *3. This Court has no reason to distinguish these cases or to hold otherwise.

In *Fair*, the Texas Supreme Court assumed "without deciding," that two "exceptions are cognizable under Texas law": (1) when a premises owner has "actual or implied notice that a natural accumulation" on the premises "created a condition substantially more dangerous than a business invitee should have anticipated by reason of knowledge of the conditions generally prevailing in the area"; and (2) when a premises owner "is 'actively negligent in permitting or creating an unnatural accumulation" of the condition. 310 S.W.3d at 416. But neither exception applies in this case. Plaintiff provides no evidence that either the premises or actions by Defendant rose to a substantially more dangerous level than a typical wet ground following rain. Nor is there any

7

evidence that Defendant was actively negligent in creating an unnatural accumulation of rainwater in the area.

Plaintiff does not address these evidentiary deficiencies. And, while he concedes that, under Texas law, rainwater is generally not an unreasonable dangerous condition, he provides examples of when water may be such a condition. ECF No. 54 at 3. He compares the valet area of this case to an inside area because the valet area is covered by a roof and the valet lane is the least exposed to the natural elements. *Id*. at 5. He views the tracking of water into the valet lane by vehicles as comparable to the tracking of water into an inside area. *Id*.

As Defendant points out in its reply brief, circumstances when water is on the floor of an inside basketball court or tracked into inside premises are markedly different than the facts here. *See* ECF No. 55 at 3–4. The evidence shows that, while the valet area is covered by a roof, it remains exposed to rainwater whether windblown or tracked in by vehicles. It is more comparable to an outside area than an inside area fully protected from the elements. On a rainy day, any patron would expect the area to be wet and potentially slippery. And while a vehicle tracking water into the valet area arguably involves unnatural assistance in the sense that it exceeds mere rainfall, it is entirely natural and expected for vehicles driving through rain to drip or track water into the areas in which they are driven. Such tracking is as natural as rain accumulating on its own. No one expects to drive on wet streets and not transfer some wetness to valet areas even when covered by a roof. Unlike walking into a closed building, there is no mechanism to dry one's tires before entering a roof-covered valet area. This differs from walking patrons tracking water into a building where the owner or operator can take measures to dry shoes as patrons enter the building.

Furthermore, as merely roof-covered, the valet area is most definitely susceptible to rainwater accumulating entirely on its own without transference from a vehicle. Whether the rainwater accumulated in the valet area through wind or splashing from the uncovered and adjacent roadway or through natural dripping and tracking from vehicles driven into the valet area, the danger from

8

the rainwater is nothing more than normally associated with rain, one which Plaintiff should have been clearly aware of, and one which is not substantially more dangerous than should have been anticipated. Plaintiff provides no evidence to the contrary. The Court views caselaw addressing patrons tracking water into the inside area of a building to be materially different and distinguishable. The expectations of encountering rainwater inside a building are markedly different from encountering rainwater in a covered valet area adjacent to a wet roadway.

Plaintiff provides a screenshot of the valet area that shows more water on the self-parking lane closest to the adjacent roadway. But that same screenshot also shows clear streaks of water heading into the valet area. These tire marks were open and obvious. Exiting a vehicle in the valet area during a rainy day dictates caution. The Court finds that, as a matter of law, the rainwater in the valet area was not an unreasonably dangerous condition. Contrary to Plaintiff's position that the valet area is unexposed, the evidence shows that the area was exposed to the weather conditions either through windblown rain or the naturally occurring transfer of water from the street to the valet area through the vehicles sought to be parked. As Defendant points out, it is impossible to provide a means of drying wet tires entering the valet area from the wet roadway. The condition presented by the rainwater in the valet area resulted from precipitation beyond Defendant's control.

For the foregoing reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment (ECF No. 50) and **MOOTS** the Motion to Strike Plaintiff's Testifying Expert Designations (ECF No. 59). By separate document the Court will issue a Final Judgment formally dismissing this case.

**IT IS SO ORDERED this 27th day of February 2025.**

**JASON PULLIAM
UNITED STATES DISTRICT JUDGE**